JOHN P. MAGUIRE & CO., Inc., Plaintiff-Appellee,

v.

Richard B. HERZOG, Defendant-Appellant.

No. 27945.

United States Court of Appeals Fifth Circuit.

Jan. 19, 1970.

**420**

Paul L. Hanes, Joseph Lefkoff, Heyman & Sizemore, Atlanta, Ga., for appellant.

G. William Thackston, Jr., Harmon & Thackston, Atlanta, Ga., for appellee.

Before BELL, AINSWORTH and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

This is an appeal by a corporate officer from a judgment of the District Court holding him liable for a corporate debt under Section 17(a) (4) of the Bankruptcy Act, 11 U.S.C.A. § 35(a) (4), despite his personal discharge in bankruptcy.

While the facts of this case are somewhat complicated, this Court is called upon to determine a narrow issue of law which may be stated as follows: Does the direction and use of proceeds, derived from the sale of goods acquired under a floorplan arrangement prior to the bankruptcy of the corporation, by a corporate officer for payment of certain corporate creditors to whom he is secondarily liable constitute a debt created by "misappropriation" within § 17(a) (4) of the Bankruptcy Act, so as to prevent its discharge when the officer is personally adjudged a bankrupt? The District Court answered this question affirmatively. Not finding this decision to be clearly erroneous, we affirm the judgment below.

Appellant Herzog was the president, director and chief managing officer, as well as the owner of seventy-nine percent of the stock, of Home Furniture Company which operated three retail stores in Atlanta. In February or March of 1965, a representative of American Furniture Company of Martinsville, Inc., negotiated a floor plan financing arrangement with Herzog as president of Home. Under this arrangement, Home would order furniture from American, and the furniture would be shipped directly to Home with the original invoices going to appellee, John P. Maguire and Company, Inc. Maguire would then pay the amount of each invoice directly to American for Home's account, and send a note, chattel mortgage or trust receipt, and copies of the invoice to Home. As each article of furniture was sold, the amounts included in the invoice and notes were to be remitted to Maguire by Home on a weekly basis.

At the time appellant executed the financing arrangement with Maguire on behalf of Home Furniture Company, Home's receivables were factored with James Talcott Company. Two bank accounts were maintained by Home—one designated as the regular account and the other designated as the Talcott account. All cash receipts from sales, including those derived from sales of American furniture, were placed in the regular account, while all payments by customers on the Talcott factored accounts were placed in the Talcott account and remitted to Talcott. No special account was maintained for proceeds of the Maguire floorplan sales. Such payments as were made to Maguire were made from the regular account.

Subsequent to the bankruptcy of Home, it had some 175 creditors, at least seven of which had required the personal endorsement or guaranty of appellant Herzog. The cash position of Home was extremely tight and, as a result Herzog, having the sole authority for such decisions and directions, applied the available cash from the regular account to the payment of creditors with the loudest demands and complaints, including those to whom appellant was secondarily liable. Thus, almost from the beginning, the proceeds of the Maguire floorplan sales were applied to the debts of other creditors.

Maguire conducted periodic field audits of its dealers. On November 2, 1965, Maguire's third audit of items held by Home revealed an unaccounted shortage of some $1,200.00. Payment in the near future was promised by appellant. The fourth audit occurred on February 1, 1966, when a shortage of some $6,800.00 appeared. For the first time, appellant informed Maguire that Home simply could not pay. On February 11, 1966, Home filed its Chapter XI bankruptcy petition and on the 16th, Maguire exercised its default repossession rights on the American furniture.

From June 1965 through February 1966, American made shipments to Home under the financing arrangements totalling $47,126.37, against which payments of $8,591.49, credits of $1,881.50, and repossession credits of $28,139.74 were applied, leaving a stipulated principal balance of $8,513.64 due Maguire from Home. Maguire made demands on appellant for payment, but appellant refused to pay.

Appellant's personal discharge in bankruptcy was granted on April 19, 1968. Plaintiff below and appellee herein filed a complaint contending that its debt was collectible from Herzog under §§ 17(a) (2) and 17(a) (4) of the Bankruptcy Act. The District Court found that there was no showing of "wilful and malicious injuries" under § 17(a) (2), but found that Maguire was entitled to recover under the "misappropriation" theory under § 17(a) (4).

In his findings of fact, the trial court stated that

"The application of Maguire proceeds to other creditors was knowing and willing on his part, motivated partly by an effort to keep the business operating and partly by an intent to reduce his own exposure on the endorsed accounts, although without any ill-will or malice or intent to injure Maguire or American in the process."

As illustrated by the exhibits and testimony introduced below, the discernible pattern of payments made to various creditors to whom appellant was secondarily liable support the trial judge's finding that appellant's application of Maguire proceeds to other creditors was motivated partly by an intent to reduce his own exposure on the accounts personally endorsed by him. This being so, we must now determine whether such action subjects appellant to liability under § 17(a) (4).

Section 17(a) (4) of the Bankruptcy Act creates an exception to the general release from provable debts effected by a discharge in bankruptcy for debts created by the bankrupt's misappropriation while acting as an officer or in any fiduciary capacity. Appellant contends

**422**

that the debt due appellee was purely contractual, and not created by a misappropriation. This novel contention has little merit. Although it is true that the debt due appellee originally arose out of Home's contractual obligation to appellee, it is the direction and application of proceeds from sales of American furniture to creditors other than appellee, to whom the payments were due, that is the basis of the present suit. If appellant's contention were upheld, § 17(a) (4) would be rendered almost totally useless for the majority of debts originally arise from some sort of contractual arrangement.

The District Court's conclusion that appellant was guilty of a "misappropriation" has support in both federal and Georgia state law. See In re Bernard, 87 F.2d 705 (2nd Cir., 1937), where an officer of an insolvent corporation who transferred assets to himself and his son, another officer, to liquidate their own claims against the corporation, was guilty of misappropriation under § 17(a) (4); In re Hammond, 98 F.2d 703 (2nd Cir., 1938), cert. den, Hammond v. Irving Trust Co., 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938), where a corporate director's purchase and sale of stock which the corporation had contracted to purchase was a misappropriation within § 17(a) (4); Tatum v. Leigh, 136 Ga. 791, 72 S.E. 236 (1911), holding that officers of an insolvent corporation may not apply the proceeds of sales of property to the payment of existing debts which the corporation owed to other persons and for which such officers were primarily liable; and Ware v. Rankin, 97 Ga.App. 837, 104 S.E.2d 555 (1958), holding that officers and directors may not use their position for the purpose of preferring themselves over creditors or utilize any scheme or device the purpose of which is to indemnify themselves against loss, whether as creditors or as endorsers of notes given by the corporation or otherwise.

■ Hence it can be seen that § 17(a) (4) has been applied when an of-

ficer of a corporation has misused his position to gain a personal benefit at the expense of the corporation or corporate creditors. The District Court found that appellant was partially motivated by a desire to indemnify himself against loss when he applied proceeds owing to appellee to other claims on which he was secondarily liable. This is a factual determination to be made by the trier of fact. A careful review of the trial record and briefs of the parties convinces us that such finding was not clearly erroneous.

Affirmed.