In re Sidney J. PALEY, Debtor.

In re Lee B. HOFHERR, a/k/a Lee B. Geller, Debtor.

AIR TRAFFIC CONFERENCE OF AMERICA, Plaintiff,

v.

Sidney J. PALEY, Debtor/Defendant.

AIR TRAFFIC CONFERENCE OF AMERICA, Plaintiff,

v.

Lee B. HOFHERR, a/k/a Lee B. Geller, Debtor/Defendant.

Bankruptcy Nos. 880 00615, 880 00616. Adv. No. 880 0271, 880 0270.

United States Bankruptcy Court, E. D. New York, at Westbury.

Jan. 16, 1981.

Rothstein & Weinstein, Melville, N. Y. by Harold Rothstein, Melville, N. Y., for debtors.

Cohen & Cohen, New York City, for plaintiff; Harold Elovich, New York City, of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

Air Traffic Conference of America ("plaintiff") has commenced an adversary proceeding against the debtors, Sidney J. Paley and Lee B. Hofherr ("defendants"), seeking to have defendants' indebtedness owed to it excepted from discharge under 11 U.S.C. section 523(a)(4). For the reasons set forth below, judgment will be granted for the defendants.

## II.

Prior to the filing of their Chapter 7 petitions, the defendants formed a limited partnership pursuant to the laws of the State of New York under the trade style Small World Travel Consultants ("Small World"). Plaintiff is a nonprofit trade association whose members comprise virtually all the scheduled air carriers certified by the Civil Aeronautics Board. On or about March 20th, 1975, plaintiff entered into a sales agency agreement ("the Agreement") with Small World. Under the Agreement (with subsequent amendments) Small

World was appointed a travel agent to represent the air carriers for the purpose of promoting and selling air passenger transportation offered by the carrier.

Plaintiff alleges that between February 20, 1977 and March 17, 1977, the defendants sold tickets totaling $38,202.26, which defendants failed to remit to plaintiff. Plaintiff has recovered $10,000 from a surety as obligee under a bond furnished by the defendants, leaving a balance of $28,202.26. Defendants do not dispute that they sold the tickets. They contend, however, that the amount due to the plaintiff is $25,202.26.

On February 7, 1980, the defendants filed for relief under Chapter 7 of the Bankruptcy Code. Thereafter, the plaintiff commenced its adversary proceedings against the defendants.

### III.

■■■ The basic purpose of the Bankruptcy Laws regarding consumers is to enable individuals "to obtain a fresh start, free from creditor harassment and free from the worries and pressures of too much debt." H.R.No.595, 95th Cong. 1st Sess. (1977) 125, *reprinted in* U.S.Code Cong. & Ad.News, pp. 5787, 6086; *See also Lines v. Fredrick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). Accordingly, exceptions to discharge are to be narrowly construed. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Danns*, 558 F.2d 114, 116 (2d Cir. 1977). Moreover, the burden of proving that a debt comes within one of the statutory exceptions is upon the party opposing the discharge of the debt. *Danns, supra*, at 116; *Matter of Falk of Bethlehem*, 3 B.R. 266, 271 (Bkrtcy.D.N.J.1980).

11 U.S.C. section 523(a) provides in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity.

*Id.* Plaintiff contends that under the Agreement, defendants' failure to turn over the receipts from the sale of the tickets constituted "defalcation while acting in a fiduciary capacity."

In support of its contention, plaintiff relies on paragraphs 4 and 5 of the Agreement.

Paragraph 4 of the Agreement provides in pertinent part:

All ticket forms and exchange orders supplied by or on behalf of the Carrier to the Agent shall be held in trust by the Agent until issued to the Agent's clients to cover transportation purchased, or until otherwise satisfactorily accounted for to the Carrier. . . .

Paragraph 5 of the Agreement provides:

All moneys, less applicable commissions to which the Agent is entitled hereunder, collected by the Agent for air passenger transportation or ancillary services sold hereunder (and for which the Agent has issued Standard Agent's tickets or exchange orders or has drawn exchange orders on the Carrier) and all transportation receipts and other required documents accepted by the Agent in payment for air passenger transportation or ancillary services sold hereunder (and for which the Agent has issued Standard Agent's tickets or exchange orders or has drawn exchange orders on the Carrier) pursuant to the Universal Air Travel Plan or other credit card plans accepted by the Carrier, shall be the property of the Carrier, and shall be held in trust by the Agent until satisfactorily accounted for to the Carrier.

The predecessor provision of section 523(a)(4), Bankruptcy Act section 17(a)(4), excepted from discharge debts that "were created ... by defalcation while acting ... in any fiduciary capacity." 11 U.S.C. section 35(a)(4) (repealed 1978). As the language of the provision governing defalcation while acting in a fiduciary capacity is almost identical under the Bankruptcy Act and the Bankruptcy Code, the case law construing Bankruptcy Act section 17(a)(4) should be followed in interpreting section 523(a)(4). *Cf. First and Merchants National*

*Bank of Radford v. Jones (In re Jones)*, 3 B.R. 410, 6 B.C.D. 68 (Bkrtcy.W.D.Va.1980) (case law construing Bankruptcy Act section 17(a)(2) should be followed in resolving dischargeability questions under 11 U.S.C. section 523(a)(2)).

 The question of who is a fiduciary for purposes of 11 U.S.C. section 523(a)(4) is one of federal law. *See Matter of Angelle*, 610 F.2d 1335, 1341 (5th Cir. 1980). The term "fiduciary" has been limited by the courts to apply only to express or technical trusts and not to trusts imposed *ex-maleficio*. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2d Cir. 1937). Moreover, the requisite trust of fiduciary relationship must exist before the incident creating the contested debt and apart from it. It is not enough that the trust relationship spring from the act from which the debt arose. *See Davis v. Aetna Acceptance Co., supra*, at 334, 55 S.Ct. at 154; *Matter of Dloogoff*, 600 F.2d 166, 168 (8th Cir. 1979). The fact that a commercial agreement contains the word "trust", however, does not make the agreement a trust agreement, nor does it create a fiduciary relationship. *See Lord's Inc. v. Maley*, 356 F.2d 456, 458 (7th Cir. 1965) *cert. denied* 385 U.S. 847, 87 S.Ct. 55, 17 L.Ed.2d 78 (1966); *Falk of Bethlehem, supra*, at 270. It is the character of the debt relationship and not its form that determines whether a fiduciary "trust" relationship exists. *See Davis v. Aetna Acceptance Co., supra*, at 334, 55 S.Ct. at 154; *Falk of Bethlehem, supra*, at 370.

 The plaintiff has rested its entire case on the submission of the Agreement. It is true that paragraphs 4 and 5 of the Agreement do contain the term "trust". However, taken in its entirety the Agreement appears to be no more than an ordinary commercial contract. It should be noted that the Agreement does not require the defendants to segregate the funds prior to paying the plaintiff. Moreover, the plaintiff neither alleged nor submitted any evidence establishing that the defendants were under a duty to segregate funds received from the sale of plaintiff's tickets. *Cf. Lord's Inc. v. Maley, supra*, at 459. (parties may establish a fiduciary relationship by providing in an agreement for segregation of funds) The Agreement is in substance an agency agreement, not a trust. The existence of a principal-agent relationship between the parties, however, does not create a fiduciary relationship. In *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844), the United States Supreme Court held that a factor who sold his principal's goods and retained the money was not a fiduciary within the meaning of the section 17(a)(4). The court stated:

If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

43 U.S. 202, 208.

The plaintiff failed to introduce any evidence proving that a trust or fiduciary relationship existed among the parties prior to the act of wrongdoing. If a trust or fiduciary relationship existed, it arose as a result of the wrongdoing, i. e., failure to remit the funds to the plaintiff. Under such circumstances, the defendants did not act in a fiduciary capacity within the meaning of 11 U.S.C. section 523(a)(4). *See Davis v. Aetna Acceptance Co., supra*, at 334, 55 S.Ct. at 154; *Matter of Dloogoff, supra*. In the absence of a true fiduciary or trust relationship, a plaintiff may not circumvent the effect of a bankruptcy discharge by adding "trust language" to an ordinary commercial agreement.

The Court finds that the plaintiff failed to meet its burden of proving that a fiduci-

ary relationship existed between it and the defendants. Accordingly, judgment will be granted for the defendants.