**In the Matter of Robert J. FOLLIARD, Jr.**

**PAN AMERICAN WORLD AIRWAYS, INC.**

v.

**Robert J. FOLLIARD, Jr.**

Civ. No. K–80–2251.
(Bankruptcy No. 79–01804–G).

United States District Court,
D. Maryland.

March 27, 1981.

Jacob Oliner, New York City, and Richard W. Lawlor, Silver Spring, Md., for appellant.

Thomas J. Sippel, Rockville, Md., for appellee.

FRANK A. KAUFMAN, District Judge.

The bankrupt and appellee herein, Robert J. Folliard, Jr., was Vice-President, Sales Manager and a stockholder[1] of Welcome Aboard Vacation Center of Washington, D. C., Inc. (Welcome Aboard), a travel agency which had been in existence since 1969. Welcome Aboard had, since 1969, been authorized by the Air Traffic Conference of America to sell flight tickets for all of the Conference's member airlines, including appellant herein, Pan American World Airways, Inc. (Pan Am). The agency agreement between Welcome Aboard and the Conference provides in part:

> All moneys, less applicable commissions to which the Agent is entitled hereunder, collected by the Agent for air transportation and ancillary services sold hereunder

1. Folliard and Thomas Comer, the President of Welcome Aboard, each owned 50% of its stock.

\* \* \* shall be the property of the carrier, and shall be held in trust by the Agent until satisfactorily accounted for to the Carrier.

The Bankruptcy Judge stated the relevant facts and procedural background as follows:

Simply stated, the travel agency collected the fares for the airline tickets which it sold, placed the funds in a certain bank account and the bank, using a report provided by the travel agency, determined the amount due and wrote checks to the airlines. These procedures were followed by Welcome Aboard until March of 1979 when two drafts totalling over $46,000.00 were returned to the A T C A [Air Traffic Conference of America] for insufficient funds. Welcome Aboard ceased operations shortly thereafter, and Robert Folliard filed a personal Bankruptcy petition on September 28, 1979.

Pan American World Airways, Inc. (Pan Am) filed a proof of claim in the Folliard Bankruptcy in the amount of $46,139.35, alleging that such amount is due for unpaid Pan Am tickets by virtue of the A T C A agreement. Pan Am also filed a complaint to determine the dischargeability of said debt, alleging that it arose out of Folliard's conversion and defalcation of Pan Am's funds while acting in a fiduciary capacity.

The extent of participation by Folliard in the transactions which led to the overdraft on the depository account is not clear. During a hearing in this Court the parties stipulated that Folliard had personally signed checks drawn on that account in a total amount of about $9,000, and that the remaining checks were written by Thomas Comer, the President of Welcome Aboard. However, some of those checks written by Comer were made payable to Welcome Aboard, and seemingly were deposited in Welcome Aboard's operating account (i. e.,

a bank account other than the depositary account herein involved) on which checks signed by Folliard may have been drawn. During proceedings conducted by the Bankruptcy Judge, Folliard testified that Comer was responsible for the financial aspects of the business. However, the Bankruptcy Judge made no findings as to the extent of Folliard's participation in transactions represented by checks which Comer signed.

The Bankruptcy Judge concluded that Welcome Aboard as a corporation was guilty of defalcation of funds belonging to Pan Am. Without specifically determining the extent of the liability, if any, of Folliard as an individual arising out of such corporate defalcation, the Bankruptcy Judge seemingly concluded that any such liability on the part of Folliard was not nondischargeable under section 17(a)(4) of the former Bankruptcy Act, formally codified at 11 U.S.C. § 35(a)(4).[2] That statute provided that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts \* \* \* except such as \* \* \* (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; \* \*." The Bankruptcy Judge bottomed his determination upon the view that the above-quoted statutory provision is only applicable, and only renders a debt nondischargeable, when the corporate officer has personally profited from his participation in the defalcation by the corporation. In so doing the Bankruptcy Judge relied upon *In re Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978).

An officer of a corporation "who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of trust committed by the corporation." 4 Scott on Trust § 326.3 at 2563 (3d ed. 1967). An officer is so liable even if he did not profit from the transaction. *Blankenship v. Boyle*, 329 F.Supp. 1089, 1110 (D.D.C.1971).[3]

2. The within bankruptcy petition was filed by Folliard before the effective date of the revised Bankruptcy Code. Accordingly, the provisions of the former Code are applicable herein. However, it would appear that the result herein

would not be different under the applicable provisions of the new Bankruptcy Code. *See* 11 U.S.C. § 523(a)(4).

3. *See also Strauss v. United States Fidelity &*

Accordingly, if Folliard in fact personally participated in the defalcation by Welcome Aboard, Folliard became personally liable for the same. The opinion of the Bankruptcy Judge in no way indicates any disagreement with that view. However, as indicated above, because he concluded that any such personal liability on Folliard's part was dischargeable in Folliard's personal bankruptcy proceeding in the absence of any personal gain on Folliard's part—a conclusion with which this Court disagrees for reasons stated *infra*—the Bankruptcy Judge did not determine whether, in fact, Folliard is so liable. On remand, the Bankruptcy Judge should conduct such further proceedings as are required in order to determine whether Folliard has any personal liability for Welcome Aboard's defalcation, and if so, the extent thereof.

The reason why this Court disagrees with the Bankruptcy Judge's conclusion that any personal liability of Folliard is necessarily dischargeable because of lack of any personal gain by Folliard is disclosed by the dichotomy existing within the context of *In re Whitlock, supra*. In that case, the bankrupt was an officer and director of two subsidiary corporations, Comet Financial Corporation and Comet Insurance Agency, as well as of the parent corporation which controlled both. Comet Financial financed the sale of mobile homes, while Comet Insurance acted as the insurance agent for the sale of insurance on the same mobile homes. There were before the Court in *Whitlock* two sets of claims, the first arising out of Comet Financial's failure to pay mobile home dealers for notes and security agreements Comet Financial had sold to banks; the second, a claim by an insurance company for failure of Comet Insurance to pay to it premiums Comet Insurance had collected for that insurance company.

In *Whitlock*, the Bankruptcy Judge concluded that Whitlock's debts to the mobile home dealers were nondischargeable under section 17(a)(4) because Whitlock had misused his position as an officer of the corporation to gain personal profit at the expense of the corporation's creditors. In so concluding, the Bankruptcy Judge relied upon *John P. Maguire & Co. v. Herzog*, 421 F.2d 419 (5th Cir. 1970). On appeal, the District Court, while accepting the reasoning of *Herzog*, found that on the facts Whitlock had not himself received any personal gain, and also concluded that Comet Financial had not acted as a fiduciary for the mobile home dealers under any express trust. The District Court held that Whitlock's indebtedness to the mobile home dealers, because of any personal participation by Whitlock in the defalcation by Comet Financial, arose out of a breach of an implied, as opposed to an express, trust; and that, in the absence of any personal gain by Whitlock, such indebtedness was dischargeable under section 17(a)(4).

By contrast, because the other claimant in *Whitlock, i. e.*, the insurance company, did have the benefit of an express trust, the language of which is not dissimilar in effect to that of the agency agreement herein: "The Agent shall accept in trust all monies collected on behalf of the Company until delivered to the Company, and the privilege of retaining commissions shall not be construed as changing this fiduciary relationship," [4] the District Court, after concluding that Whitlock was personally liable for defaults by Comet Insurance to the insurance company, held that notwithstanding the absence of personal gain on Whitlock's part, such debts were nondischargeable under section 17(a)(4).[5]

---

*Guaranty Co.*, 63 F.2d 174, 175–76 (4th Cir. 1933); *Cafritz v. Corporation Audit Co.*, 60 F.Supp. 627, 633 (D.D.C.1945); *Hinkle Iron Co. v. Kohn*, 229 N.Y. 179, 128 N.E. 113 (1920).

**4.** Paragraph IX–C, Agency Agreement between Comet Insurance Agency, Inc. (as Agent) and the Transamerica Insurance Group (the Com-

pany), in the court file for *In re Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978).

**5.** The District Court relied, on an alternative basis, upon certain Missouri and Kansas statutes, regulating insurance agents, which imposed personal liability on individuals who received and controlled premium funds. 449 F.Supp. 1383, 1390.

In the within case, an express trust exists. Thus, if Folliard personally participated in the breach of that trust, Folliard is personally liable therefor and any indebtedness arising from that liability is nondischargeable, whether or not Folliard profited personally. Accordingly, the within case must be remanded to the Bankruptcy Judge for further proceedings in accordance with this opinion.