**In re Wayne NIVEN, Debtor,**

**In re Jim NIX, Debtor,**

**TRAVELERS EXPRESS CO., INC., Plaintiff,**

**v.**

**Wayne NIVEN, Defendant,**

**Jim Nix, Defendant.**

**Bankruptcy Nos. BK–82–01262, BK–82–01261.**

**Adv. Nos. 82–0364, 82–0363.**

United States Bankruptcy Court, W.D. Oklahoma.

Aug. 22, 1983.

---

John L. Wolking, of Hammons, Wolking & Hammons, El Reno, Okl., for debtors/defendants.

James H. Bellingham, of McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl., for plaintiff.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

These cases, involving two separate debtors/defendants and a common plaintiff, have been consolidated owing to the identical nature of the complaint against the defendants. The essential facts are not in dispute.

On September 4, 1980, Plaintiff, Travelers Express Co., Inc. ("Travelers") and Old Place, Inc., entered into an agreement ("the Trust Agreement") for the purpose of Old Place, Inc. being able to sell Travelers' money orders to its market customers. Jim Nix and Wayne Niven (collectively, "Debtors") executed said Trust Agreement in their capacity as officers of Old Place, Inc. Contemporaneously with the execution of the Trust Agreement, Debtors, as part of the same instrument, executed a Personal Indemnity and Guaranty whereby Debtors, jointly and severally, personally guaranteed Old Place, Inc.'s full performance of the Trust Agreement and further agreed to in-

demnify Travelers against any and all loss sustained by it. Debtors failed, as officers of Old Place, Inc., to pay Travelers certain sums due it, to wit, sixteen thousand five hundred thirty-six dollars and ninety cents ($16,536.90) and further commingled the proceeds of the sale of Travelers' money orders and used these proceeds to pay other general creditors. Debtors subsequently filed their individual Chapter 7 petitions in bankruptcy. Travelers has brought this complaint seeking the sum of sixteen thousand five hundred thirty-six dollars and ninety cents ($16,536.90), plus interest, alleging that such debt is nondischargeable, pursuant to 11 U.S.C. § 523(a)(4).

Debtors moved to dismiss Travelers' complaint, alleging (1) the complaint fails to establish a trust relationship between Travelers and Debtors; (2) the complaint fails to allege any breach of any trust relationship to Old Place, Inc. and (3) the Trust Agreement between Travelers and Old Place, Inc. is not sufficient as a matter of law to constitute a trust relationship within the purview of the Bankruptcy Code.

The parties submitted briefs and the matter was taken under advisement.

A resolution of this case mandates a two-pronged inquiry. First, was there a "fraud" or "defalcation" committed under a "fiduciary capacity"; second, to constitute "fiduciary capacity", was there a technical or expressed trust relationship among the parties.

Title 11 U.S.C. § 523 provides in pertinent part:

(a) A discharge under section 727, 1141, or 1328(h) of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity . . .

"Defalcation" has been defined as "the failure of one who has received monies in trust to pay it over as he ought. It is a broader word than fraud, embezzlement or misappropriation, and covers cases where there was no fraud, embezzlement, or willful misappropriation on the part of the

bankrupt." *In re Herbst,* 22 F.Supp. 353, 354 (D.C.S.D.N.Y.1937). In affirming the ruling of the district court, Judge Learned Hand, in *Central Hanover Bank and Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937), noted that, although colloquially, the word "defalcation" ordinarily implies some moral dereliction, in a bankruptcy context it may include innocent default, including all fiduciaries, who for any reason were short in their accounts. "[W]hen a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of 'defalcation' though it may not be a 'fraud', or an 'embezzlement', or perhaps not even a 'misappropriation'." *Id.* at 512.

The case of *John P. Maguire and Co. v. Herzog,* 421 F.2d 419 (5th Cir.1970) is somewhat analogous to the case at bar. *Herzog* was decided under § 17a(4) of the Bankruptcy Act which created an exception to discharge for debts created by the debtor's fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity. The Court in *Herzog* resolved the matter by a determination that the debtor committed a misappropriation while an officer. Paragraph 4 of § 523(a) of the Bankruptcy Code omits the word "officer". "But the omission is without significance because an officer who misappropriates funds of a corporation is acting in a fiduciary capacity, and despite deletion of the word 'officer', the debt would be nondischargeable." 3 *Collier on Bankruptcy,* para. 523.14, n. 1 at 523–94 (15th ed. 1979) (citation omitted). As we have already noted, a "defalcation" is much broader a term than "misappropriation" and therefore *Herzog* may be utilized in supplying a standard for committing a "defalcation". The Court in *Herzog* found that a corporate officer's application of proceeds, derived from the sale of goods acquired under a floorplan arrangement, prior to the bankruptcy of the corporation, which were to be held by the corporation for the creditor and then remitted on a periodic basis, and were instead applied to the debts of other creditors, constituted a debt created by "misappropriation" so as to bar its dis-

charge when the officer was personally adjudged a bankrupt.

■ Accordingly, it is our opinion that Debtors committed a "defalcation".

A finding of "defalcation" does not, however, end the matter for in order to effect a complete resolution, we must address the second prong of our inquiry, namely, whether the defalcation was committed while acting in a "fiduciary capacity".

■ "Fiduciary capacity" as used in § 523, *supra,* has been held to connote the idea of trust or confidence, which relationship arises whenever one's property is placed in the custody of another. *In re Romero,* 535 F.2d 618 (10th Cir.1976). Furthermore, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Romero, supra.*

The fiduciary relationship referred to in § 523(a)(4) has been held to be limited to express and technical trusts. *Davis v. Aetna Acceptance Co., supra; In re Romero, supra; In re Cairone,* 12 B.R. 60 (Bkrtcy.D. R.I.1981). Further, it has been held the trust may not be one arising or implied from a contract. *In re Romero, supra. Cf. Davis v. Aetna, supra; In re Paley,* 8 B.R. 466 (Bkrtcy.E.D.N.Y.1981) (it is not enough that the trust relationship spring from the act from which the debt arose). The fact that a commercial agreement contains the word "trust", however, does not make the agreement a trust agreement. *Davis v. Aetna Acceptance Co., supra; In re Paley, supra.* "In the absence of a true fiduciary or trust relationship, a plaintiff may not circumvent the effect of a bankruptcy discharge by adding 'trust language' to an ordinary commercial agreement." *In re Paley, supra,* at 469.

■ The question of who is a fiduciary for purposes of § 523(a)(4) is one of federal law. *Matter of Angelle,* 610 F.2d 1335 (5th Cir.1980). However, state law plays an important role in determining whether a specific case involves an express trust. *Matter*

*of Angelle, supra; In re Cairone, supra. Cf. Jaffke v. Dunham,* 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (determination of whether trust established in bankruptcy proceeding under § 70(a)(4), 11 U.S.C. § 110(a)(4), is one of state law). In Oklahoma, it has been held that for an express trust to be created, there must be a trustee designated and a present intention to create a trust by the party having the legal and equitable control of the subject matter. Intention is necessary at the time of execution of the trust, but it may be manifested by subsequent actions of the parties. *C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty.,* 503 P.2d 554 (Okl.1972).

The Trust Agreement provides in pertinent part:

THIS TRUST AGREEMENT made between TRAVELERS EXPRESS, INC. and OLD PLACE, INC., a corporation, whereby it is agreed between them as follows:

1. Appointment of Agent. The Company hereby appoints Agent as its trustee and agent for the sale of the Company's money orders at each of Agent's existing, relocated or future places of business.

2. Trust Relationship. Agent shall receive and hold in trust for the Company all blank money orders delivered to Agent by the Company and all money received by Agent from the issuance and sale of money orders (except Agent's commission), hereinafter called 'trust funds', separate and apart from all other funds. If Agent commingles the trust funds with other funds, the total commingled funds shall constitute the trust funds and shall belong and be payable to the Company to the extent necessary to secure the payment of all moneys payable by Agent to the Company.

Although the agreement refers to an "agent", we believe the term describes the mere titles used to refer to the particular individuals, it does not describe the legal relationship existing between the parties.

■ After careful review of all the above, we are of the opinion that the Trust Agreement entered into between all the parties was a "trust" for purposes of the "fiduciary capacity" requirements of § 523(a)(4). Clearly, the document evidences an explicit declaration of the creation of a trust and an intent to create a trust relationship. Further, and we believe, more importantly, there exists a clearly defined trust res. It is the absence of such a trust res which has led the courts to hold that a trust sufficient for the "fiduciary capacity" requirement of § 523(a)(4) was not present. *In re Paley, supra; Matter of Graham,* 7 B.R. 5 (Bkrtcy.D.Nev.1980) (a fiduciary relationship requires a separate account). *Cf. In re Simmons,* 9 B.R. 62 (Bkrtcy.S.D.Fla.1981) (separate account provides a fiduciary relationship; fact that debtor later commingled other funds in the trust account does not extinguish the fiduciary relationship). We are also satisfied that the trust arose prior to, rather than by virtue of, any defalcation.

Although it is true that the debt due [Travelers] originally arose out of [Debtors'] contractual obligation to [Travelers], it is the direction and application of [funds] to creditors other than [Travelers], to whom the payments were due, that is the basis of the present suit. If [Debtors'] contention were upheld, § 17a(4) (§ 523(a)(4)) would be rendered almost totally useless for the majority of debts originally arise from some sort of contractual agreement.

*John P. McGuire & Co. v. Herzog, supra,* at 422.

Debtors cite us to *Kelley v. Conwed Corp.,* 429 F.Supp. 969 (D.C.E.D.Va.1977) and *Matter of Cross,* 666 F.2d 873 (5th Cir. Unit B 1982) as supportive of their position. The Court in *Kelley* held that an individual creditor cannot recover against a corporate officer for the general misappropriation of corporate funds. The Court then stated that:

No allegation or proof in this case indicates that the funds misappropriated bore any special relationship to the pre-existing debt owed the plaintiff. This case is thus distinguishable from the myriad of cases under § 17(a)(4) in which the mis-

appropriator bore a particular duty to someone regarding specific property or monies.

*Kelley v. Conwed Corp., supra,* at 972. The Court in *Matter of Cross, supra,* held that it was a requirement that the claimant be the beneficiary of a preexisting fiduciary relationship. Noting that there was no obligation to maintain a segregated account nor was there present documents which would establish a fiduciary relationship, the Court held the debt in question to be dischargeable. The facts in the case at bar clearly distinguish themselves from these cases and therefore Debtors' reliance on these cases is inapposite.

In holding that the agreement between Debtors and Travelers constitutes a trust agreement, we are not achieving that result by ignoring the established principles of the law of trusts. The facts here present well establish that Debtors received, collected, and misapplied monies due under and pursuant to clear and definite terms set forth in the Trust Agreement. Therefore, Debtors committed a defalcation while acting in a fiduciary capacity.

Accordingly, Debtors' Motion for Dismissal is denied. Further, judgment for Travelers in the amount of sixteen thousand five hundred thirty-six dollars and ninety cents ($16,536.90), plus interest at the rate of 10% per annum until date of judgment, and interest at a rate of *10.74%* per annum until paid, is hereby awarded against the Debtors, jointly and severally.

An appropriate judgment will be entered separately.

Pursuant to B.R. 752, this Memorandum Opinion and Order constitutes the findings of fact and conclusions of law.