In re John F. & Mary I. HICKEY, Debtors.

FORD MOTOR CREDIT CO., Plaintiff,

v.

John F. & Mary I. HICKEY, Defendants.

Bankruptcy No. 84–00138–BKC–TCB. Adv. No. 84–0233–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

July 11, 1984.

Patrick Scott, Miami, Fla., for plaintiff.

Andrew Tramont, Miami, Fla., for defendants.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiff seeks exception from discharge for its claim of $362,987 under 11 U.S.C. § 523(a)(4) and (6). The principal obligor is the debtors' corporation. The debtors are secondarily liable. The debtors have answered and the matter was tried on June 21. At trial, plaintiff abandoned its first Count presented under § 523(a)(2)(B) and dropped all its charges against the debtor/wife. I conclude that the debt is dischargeable.

The facts are not in significant dispute. The debtor/husband (hereafter, the debtor) completely owned and controlled a corporate Ford dealership in Troy, New York. His stock was financed by Ford Motor Credit Corporation under a typical floor plan arrangement which obligated him to pay FMCC for each car from the proceeds received from its sale. The agreement provided that:

"Any and all proceeds of any sale or other disposition of the merchandise by Dealer shall be received and held by Dealer in trust for FMCC and shall be fully, faithfully and promptly accounted for and remitted by the Dealer to FMCC to the extent of Dealer's obligation to FMCC with respect to such merchandise."

The dealer had a contract to furnish school buses to the State. This contract became a major part of his business. The State's payments and Ford's payment of volume credits to him were slow enough to cause distress to the business and on January 16, 1977 the dealership sold a vehicle out of trust, that is to say, payment was received and FMCC was not paid. There were a number of others after that date.

On February 4, two and a half weeks after the first sale out of trust and as soon the debtor learned of it, the debtor voluntarily advised FMCC what he had done. FMCC immediately suspended his wholesale line of credit, installed an agent there full time, and completed an audit which on February 8 reflected total out of trust sales of $187,699. Some more were discovered later. The business was forced to close and was liquidated on April 5.

During the intervening two months, the debtor assigned to FMCC all the credits he expected to receive from Ford. These estimated credits would have been more than ample to cover his deficiency. Not until May 18 did he learn that the credits had been denied. The credits have never been pursued by FMCC.

In the course of the liquidation, the debtor paid off all liens, paid $60,000 on account to FMCC and realized a surplus of $200,000 which he used to buy a Buick dealership for his son in Vero Beach. He also transferred 30 used cars worth $30,000 to that dealership. FMCC, which was also confident that the Ford credits would eventually cover its account, never demanded all the proceeds of the liquidation.

Section 523(a)(4) excepts from discharge debts:

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

There is no evidence here of fraud, embezzlement or larceny. *John P. Maguire & Co. v. Herzog,* 421 F.2d 419, (5th Cir.1970) dealt with a debtor's sales out of trust under a similar floor plan arrangement. It held that the debt was not dischargeable under § 17(a) of the former Act. This decision, which has been followed more recently in *Carey Lumber Co. v. Bell,* 615 F.2d 370, 375 (5th Cir.1980), is presently controlling within this Circuit. *Dills v. City of Marietta, Ga.,* 674 F.2d 1377, 1380 (11th Cir.1982).

In *Herzog,* the Fifth Circuit said:

"Does the direction and use of proceeds, derived from the sale of goods acquired under a floorplan arrangement prior to the bankruptcy of the corporation, by a corporate officer for payment of certain corporate creditors to whom he is secondarily liable constitute a debt created by 'misappropriation' within § 17(a)(4) of the Bankruptcy Act, so as to prevent its discharge when the officer is personally adjudged a bankrupt? The District Court answered this question affirmatively. Not finding this decision to be clearly erroneous, we affirm the judgment below." At 420.

The former Act § 17a(4) excepted from discharge debts that:

"were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."

There is no indication in the legislative history of the present provision that there was any intent to narrow the scope of former § 17a(4). Although the term "misappropriation" is eliminated, the term "defalcation" is generally recognized as a broader term. *Collier on Bankruptcy* (15th ed.) ¶ 523.14[1][b] n. 3. Although defalcation commonly refers to the conduct of public officers, it is not necessarily so restricted.

Similarly, the omission of "officer" in the present version is without significance because an officer who misappropriates funds of a corporation is acting in a fiduciary capacity, and despite deletion of the word "officer" the debt would be nondischargeable. *Collier on Bankruptcy* (15th ed.) ¶ 523.14 n. 1.

In this case as in *Herzog,* there was no requirement by the creditor that the funds be segregated and in fact they were commingled. That fact is, therefore, immaterial.

I am convinced that the *Herzog* case remains completely applicable to § 523(a)(4). However, a significant factual difference requires a different conclusion in this case. Unlike the *Herzog* case, there is no evidence that the debtor "misused his position to gain a personal benefit at the expense of the corporation or corporate creditors." It is clear that this was the essential basis for the *Herzog* holding.[1] At. 422.

In this case, no part of the money received for the vehicles sold out of trust was used for any non-corporate purpose. The debtor, who was then confident he would receive substantial credits from Ford, used the sales proceeds to pay his most pressing business expenses in order to keep his doors open. This was the debtor's only purpose. Plaintiff concedes that it was at that time in the best interest of both the corporation and its creditors, including FMCC, to keep the business going.

Some of the money was used to pay rent to himself as landlord, but all that money was used to make mortgage payments. The mortgaged property ultimately provided a surplus for the debtor, but that was an incidental benefit and not the reason the mortgages were paid. Some of the money was used to meet the business payroll which included the debtor's salary, but this, too, was incidental. It is clear that there

---

**1.** In *In re Tocci,* 34 B.R. 66, 68 (Bkrtcy.S.D.Fla. 1983), I reached the opposite conclusion. However, on rehearing I receded and held the debt dischargeable in an Order not yet published. (C.P. No. 18).

was no pattern of disbursements to gain a personal benefit.

 I find no defalcation while acting in a fiduciary capacity in the debtor's use of the busines receipts which are in question here. Plaintiff has, therefore, failed to substantiate its allegations under § 523(a)(4).

The remaining charges are under § 523(a)(6), which excepts from discharge debts:

> "for willful and malicious injury by the debtor to another entity or to the property of another entity."

Plaintiff has offered no additional evidence in support of this Count. In *Herzog* the trial court found no willful and malicious injury in the facts before it. As has already been noted, the facts here are significantly weaker. I make the same finding in this case.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice. Costs may be taxed on motion.