**In re Anne-Lise CHICK dba Viking Travel Service and Dennis M. Chick, fdba Viking Travel Service; both fdba McKenzie Consultants; McKenzie Luggage; Accent on Cruises; Beaver Creek Travel, Debtors.**

**AIR TRAFFIC CONFERENCE OF AMERICA, an unincorporated trade association, Plaintiff,**

**v.**

**Anne-Lise CHICK dba Viking Travel Service and Dennis Chick, fdba Viking Travel Service, Defendants.**

**Bankruptcy Nos. 682–07415, 683–07048. Adv. No. 682–7249.**

United States Bankruptcy Court, D. Oregon.

Sept. 30, 1985.

Donald Thies, Eugene, Or., for debtors.

Michael Doyle, Eugene, Or., for plaintiff.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This is an adversary proceeding to determine dischargeability under 11 U.S.C. § 523. Plaintiff contends that the debt owed to plaintiff arises from fraud or defalcation while acting in a fiduciary capacity, embezzlement, larceny or from willful and malicious injury by the debtors to the plaintiff's property, thus, the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) & (6). In addition, plaintiff seeks punitive damages and a reasonable attorney's fee for the prosecution of its claim. Debtors-defendants deny that they are guilty of any wrongdoing and seek an award of reasonable attorney's fees incurred in the defense of this claim.

Many of the pertinent facts were agreed to between the parties in the pre-trial order and document entitled "Stipulated Facts". In substance, the facts agreed to include the following:

1. Plaintiff is an unincorporated trade association representing several domestic and foreign airlines and is authorized, by said airlines, to conduct legal proceedings on their behalf and to collect money due and owing to them;

2. The defendants have scheduled the plaintiff as a creditor in their bankruptcy proceedings;

3. Defendant, Anne-Lise Chick, did business as "Viking Travel Service" at all times material to this adversary proceeding;

4. Defendants were authorized, pursuant to a sales agency agreement (introduced at the trial herein as plaintiff's Ex-

hibit 1), to sell airline tickets, collect the proceeds therefrom and deposit said funds in an area depository bank for payment to the airlines;

5. The sales agency agreement specifically provides that defendants would hold all proceeds collected from the sales of airline tickets (less applicable commissions) in trust for the appropriate airlines until satisfactorily accounted for to the carriers;

6. The sales agency agreement required Viking Travel Service to submit weekly sales reports to plaintiff and to authorize plaintiff to draw checks on the bank account of Viking Travel Service for sums due the airlines;

7. Viking Travel Service complied with the requirements set forth concerning the submission of weekly sales reports to plaintiff;

8. During five (5) one-week periods, beginning March 21, 1982, ending the week of April 18, 1982, Viking Travel Service issued airline tickets to the general public and reported sales to plaintiff in the aggregate sum of $79,849.72. Plaintiff presented drafts to the bank account of Viking Travel Service, located at Valley State Bank, in this amount, which were returned marked "not sufficient funds" by the bank;

9. At least a portion of the funds received by Viking Travel Service were used for business purposes other than payment to plaintiff or the concerned airlines;

10. Plaintiff has never received payment of the amount of $79,849.72 or any part thereof; and

11. The sales agency agreement was signed, on behalf of Viking Travel Service, on July 8, 1981 by debtor-defendant, Anne-Lise Chick.

Although not specifically agreed to by the parties, the court takes notice from reviewing its own records that defendant, Anne-Lise Chick, filed her petition for relief under Chapter 7 of Title 11, United States Code on May 10, 1982 and defendant, Dennis Chick, filed his petition for relief under Chapter 7 herein on January 20, 1983.

The issues to be resolved by this court, at trial, include the following:

1. Whether or not the actions of defendant, Anne-Lise Chick, were such that she has committed a fraud or defalcation while acting in a fiduciary capacity with the plaintiff?

2. Whether or not the actions of defendant, Anne-Lise Chick, were such that she has committed embezzlement or larceny of the plaintiff's property?

3. Whether or not the actions of defendant, Anne-Lise Chick, were such that she has committed a willful and malicious injury to the plaintiff's property? and

4. Was the involvement of defendant, Dennis Chick, in the business of Viking Travel Service, such that he could be held jointly liable for any wrongdoing committed by defendant, Anne-Lise Chick?

At the trial, the plaintiff introduced numerous evidentiary exhibits; the defendants introduced the testimony of Anne-Lise Chick, now known as Anne-Lise Fleisher and Dennis Chick.

On the issue of Dennis Chick's involvement in the business known as Viking Travel Service, the only evidence offered by plaintiff was plaintiff's Exhibit 7, a copy of the assumed business name for, Viking Travel Service, on file with the Oregon Corporation Division, in which Dennis Chick appears as a party of interest, along with defendant, Anne-Lise Chick. The uncontroverted testimony of both defendants was that, as husband and wife, they had operated Viking Travel Service, in Eugene, Oregon, as partners, prior to May, 1980, when they separated. After that time, Dennis Chick opened a luggage store next door to Viking Travel Service and helped out by answering telephones and performing other tasks that could not be considered to be of a management nature. Dennis Chick testified that his involvement with Viking Travel Service ended on or about January or February of 1981. Anne-Lise Chick testified that Dennis Chick's involvement, as a partner in the business, ceased after the defendants were separat-

ed. Dennis Chick moved to Bend, Oregon in the fall of 1981. She paid him money, from time to time, from the business as draws. It was her intention that the money paid to Dennis Chick was to be considered a voluntary contribution, by her, as child support. In line with this testimony is plaintiff's Exhibit 2, a memorandum of the sales agency agreement, showing that Anne-Lise Chick has signed as an owner of Viking Travel Service. The signature of Dennis Chick does not appear on this document. Finally, Anne-Lise Chick testified that she had intended to buy out Dennis Chick's interest in the business but lacked the necessary funds for that purpose.

█ Based on this evidence, the court concludes that the defendant, Dennis Chick, would have no liability for any wrongdoing committed by the defendant, Anne-Lise Chick and that the defendant, Dennis Chick, is entitled to judgment in his favor on the issue of dischargeability. The remainder of this opinion is concerned with the contentions raised by plaintiff insofar as the defendant, Anne-Lise Chick is concerned.

At the trial, Anne-Lise Chick testified, in substance, that she began to have financial difficulties, in the operation of Viking Travel Service, in 1980. In 1982, Valley State Bank seized approximately $9,000.00, on deposit in the Viking Travel Service account, to pay indebtedness owed to the bank. This was one factor in the return of plaintiff's drafts for not sufficient funds. By the time of this seizure, Valley State Bank had discontinued its credit arrangements with Viking Travel Service and she was desperately searching for new financing. After the seizure of funds, Anne-Lise Chick began to deposit the receipts of Viking Travel Service into the trust account of her attorney, William Furtick. She instructed him to pay monies owed to the Internal Revenue Service, wages of employees and other basic overhead expenses (that would require immediate payment to keep the business open) such as rent and utilities. She did not instruct Mr. Furtick to make any payment to plaintiff, as she

hoped to arrange new financing to continue the travel agency and had intended to pay the plaintiff from such new financing. Approximately $18,000.00 was processed through the attorney's trust account on this arrangement. Finally, in late April, 1982, Viking Travel Service was evicted from its premises for non-payment of rent. At that time, she realized that she would have to discontinue her efforts to keep the business going. She then requested that plaintiff pick up the "plates" which enabled her to issue airline tickets.

Anne-Lise Chick also testified as to her experience in the travel agency (some fifteen (15) years). She testified that it is the custom, in the travel industry, that the travel agency may commingle funds received from airline ticket sales with other funds and that these funds may be used to pay the agency's general business expenses. Finally, she testified that some commercial accounts were sold airline tickets on credit. Although there is no provision allowing this in the sales agency agreement, this is common practice in the industry and the airlines are aware of these common practices. None of the testimony offered by defendant, Anne-Lise Chick, was controverted by the plaintiff.

The sales agency agreement does not require that the defendant establish a separate trust account for proceeds received from airline ticket sales.

The pertinent portions of 11 U.S.C. § 523 relied upon by plaintiff are as follows:

"(a) A discharge under Section 727, ... of this title does not discharge an individual debtor from any debt ...

(4) for fraud or defalcation while acting in fiduciary capacity, embezzlement, or larceny; ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ..."

HAS THE DEFENDANT COMMITTED FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY FOR THE PLAINTIFF?

■ In order to hold a debt nondischargeable, the fiduciary relationship must have existed, as an express trust, prior to the wrongdoing complained of. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The leading case in the Ninth Circuit on this issue is *Schlect v. Thornton (In re Thornton)* 544 F.2d 1005 (9th Cir.1976). There, an employer was required by a collective bargaining agreement to withhold and contribute funds to a vacation-savings fund. Although Thornton withheld the funds, he failed to make the required contributions. The court held there was no fiduciary relationship and that his debt to the fund was dischargeable. The court announced several criteria or characteristics that must exist in order to give rise to an express trust; these are:

1. Specific words in the contract or other document that create a trust;

2. Definite subject matter and beneficiary;

3. A specified res or trust corpus; and most importantly,

4. A specific intent to create a fiduciary relationship.

In *Argonaut Insurance Co. v. Morris (In re Morris)* 37 B.R. 682 (Bankr.D.Or. 1983), Judge Donal D. Sullivan, of this court, found that no fiduciary capacity existed between an insurance agent and his principal insurance company in spite of the fact that the agency agreement stated that premiums received would be held in trust for the insurance company and specifically stated that a fiduciary relationship was created. Judge Sullivan found that the facts revealed that there was no requirement of a separate account for funds that the agreement stated would be held in trust. On the contrary, the agreement specifically allowed commingling of the alleged trust funds and their use prior to remittance. The principal terms relied upon, by the insurance company, as the basis for a fiduciary relationship were found to be merely boiler plate terms and not indicative of plaintiff's true relationship with the debtor. The court concluded, that there was a debt-or-creditor relationship between the parties, similar to that between a wholesaler and a retailer.

In another case, the creditor, in a floor financing agreement, claimed the contract created a fiduciary relationship which precluded discharge of its claim. The agreement required proceeds of the sale of each appliance to be held in trust until its cost was remitted to plaintiff. The court held that the absence of a separate account or a requirement thereof, defeated the express trust clauses found in the security agreement. *General Electric Credit Corp. v. Graham (In re Graham)* 7 B.R. 5 (Bankr. D.Nev.1980).

Cases construing agreements between an airline conference and travel agents have reached conflicting results on facts similar to those presented in this case. *Pan American World Airways, Inc. v. Folliard (In re Folliard)* 10 B.R. 875 (D.Ct.Md. 1981), *Air Traffic Conference v. Paley (In re Paley)* 8 B.R. 466 (Bankr.E.D.N.Y.1983).

■ Plaintiff relies on the language contained in the sales agency agreement, providing that:

"All monies and credit card billing documents, less applicable commissions, collected by the agent for sales hereunder will be the property of the carriers, and will be held in trust by the agent until satisfactorily accounted for to the carriers." Plaintiff's Exhibit 1, Section VIII A 5, Page 18.

There is no specific requirement, contained in the document, for a segregation of funds through the maintenance of a separate account. Indeed, it was the testimony of defendant, Anne-Lise Chick, that it is the custom in the industry to commingle funds received from airline ticket sales with other funds of a travel agency that are commonly used to pay operating expenses. Accordingly, applying the criteria established by the Ninth Circuit Court of Appeals in *Thornton,* this court finds as did the courts in *Argonaut Insurance Co. v. Morris* and *General Electric Credit Corp. v. Graham,* that the language contained in the sales

agency agreement, evidencing a trust, is mere boiler plate. In looking at the substance of the relationship between the parties, the specific intent to create an express trust (fiduciary relationship) is lacking. This court finds that the relationship existing between the defendant, Anne-Lise Chick, and the plaintiff is a debtor-creditor relationship, not a fiduciary one.

IN THE ABSENCE OF A FIDUCIARY RELATIONSHIP OR CAPACITY HAS THE DEFENDANT, ANNE–LISE CHICK, COMMITTED EMBEZZLEMENT OR LARCENY WHICH WOULD RENDER HER DEBT TO THE PLAINTIFF NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(a)(4)?

■ There can be no larceny where the initial receipt of the funds is lawful. *Great American Insurance Company v. Storms (In re Storms)* 28 B.R. 761 (Bankr. E.D.N.C.1983). Here, the agreement between the parties contemplated that the defendant would sell airline tickets on behalf of plaintiff's carriers and defendant would receive the proceeds for later accounting to the plaintiff. Thus, defendant's initial receipt of the funds was lawful which precludes a finding of larceny.

■ Embezzlement has been defined as an intentional misappropriation of money or property of another that has been lawfully received, but knowingly and wrongfully misused by the "embezzler". *Central Investors Real Estate Corp. v. Powell (In re Powell)*, 54 B.R. 123 (Bankr.D. Or.1983) (Luckey, J). *Great American Insurance Company v. Storms* was another case involving an insurance agent, similar to *Argonaut*, where the agent was permitted to hold premium payments, received from insurance policy sales, until the time of remittance to the insurance company. The agency contract stated premiums, less commissions, would be held in trust and that there was a fiduciary relationship. As in this case, there was no requirement that funds be segregated or maintained in a separate account. The debtor failed to make remittance to plaintiff when due. The court held that the debt owed by the insurance agent to the insurance company was dischargeable. It found that there was no fiduciary relationship, as this court has already concluded, it found a debtor-creditor relationship existed. The court also concluded that there was no embezzlement since, in a debtor-creditor relationship, the funds belong to the debtor when received. Here, the uncontroverted testimony was that the defendant, Anne-Lise Chick, could commingle the funds with other general operating funds of Viking Travel Service without restriction. Accordingly, the defendant, Anne-Lise Chick, did not "embezzle" funds of the plaintiff since funds were not wrongfully misappropriated or misused.

HAS THE DEFENDANT, ANNE–LISE CHICK, COMMITTED A WILLFUL AND MALICIOUS INJURY TO PLAINTIFF'S PROPERTY WHICH WOULD RENDER HER DEBT TO PLAINTIFF NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)?

■ In this district, the standard has been established that in order for a debt to be held nondischargeable under 11 U.S.C. § 523(a)(6), the creditor must prove that the acts of the debtor were done either with the intent of causing harm (deliberate and intentional) or with substantial likelihood of causing the harm that has resulted. *Alexander v. Donnelly (In re Donnelly)* 6 B.R. 19 (Bankr.D.Or.1980) and *Henshen v. Williamson (In re Williamson)* 683–6214, Slip op. (Bankr.D.Or.1983) (Wilhardt, J.). In *Donnelly*, the plaintiff-creditor was injured as a passenger in a vehicle driven by the debtor. The debtor conceded she was guilty of reckless driving. The court held that the personal injury award, granted to creditor, was dischargeable since the appropriate burden had not been met. In *Henshen*, the debtor intentionally drank to excess and then injured the plaintiff in an automobile accident, while driving. The court applied the standard announced in *Donnelly* and found that plaintiff had failed to meet the burden of proof, on whether the debtor's acts were willful and

704

malicious, since the accident had not been intentionally caused by the debtor.

 Plaintiff contends that the transfer of funds by defendant to her attorney's trust account, with instructions to pay business expenses, other than the obligation owed to plaintiff, constitutes willful and malicious injury. This court finds, however, that there is no evidence to show that the transfer was made, by the defendant, with the intent to cause harm to the plaintiff. The funds were placed in her attorney's trust account to avoid confiscation by Valley State Bank. The only testimony regarding the defendant's intent, on this matter, indicates that at the time of the transfer, she was desperately attempting to keep her business operations alive and to negotiate new financing arrangements. She testified that she hoped to pay the obligation, owing to plaintiff, from the proceeds of such new financing. Accordingly, this court concludes that plaintiff has failed to meet its burden of proving a willful or malicious injury by the defendant.

Based upon the court's findings and conclusions stated above, this court finds that the obligation owing by the defendant, Anne-Lise Chick, to plaintiff, is dischargeable in the defendant's bankruptcy proceeding and that a judgment should be entered accordingly.

ARE THE DEFENDANTS ENTITLED TO AN AWARD, AS PART OF THEIR JUDGMENT AGAINST PLAINTIFF, FOR THEIR REASONABLE ATTORNEY'S FEES INCURRED IN THE DEFENSE OF THIS PROCEEDING?

 The only authority, found in 11 U.S.C. § 523, concerning an award for attorney's fees is found in 11 U.S.C. § 523(d) which provides as follows:

"If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine discharge-

ability, unless such granting of judgment would be clearly inequitable."

This case does not involve a request for a determination of dischargeability under 11 U.S.C. § 523(a)(2) nor is the debt in question a consumer debt, hence 11 U.S.C. § 523 does not authorize an award of attorney's fees to the defendants.

 Since an adversary proceeding to determine dischargeability is purely a question of federal bankruptcy law, ORS 20.090 and other state law that may authorize an award of attorney's fees to the defendants, as a prevailing party, do not apply. *Check Central of Oregon, Inc. v. Barr (In re Barr)*, 54 B.R. 922 (D.Or.1984) (Frye, J.). Accordingly, this court concludes that an award of attorney's fees, to the defendants, is not appropriate in this case.

This opinion shall constitute findings and conclusions under Federal Rule of Civil Procedure 52 as made applicable to this court by Bankruptcy Rule 7052, they shall not be separately stated.