In re William Nathaniel POWELL and Britt Tholander Powell, FDBA Oregon Hot Tubs & Spas; F & M Cleaners & Laundromat; Payless Cleaners; Sunshine Cleaners & Laundromat, Debtors.

CENTRAL INVESTORS REAL ESTATE CORPORATION, an Oregon corporation, Plaintiff,

v.

William Nathaniel POWELL, Defendant.

Bankruptcy No. 681–06319.
Adv. No. 681–6406.

United States Bankruptcy Court, D. Oregon.

Nov. 15, 1983.

Richard C. Houghton, Eugene, Or., for plaintiff Cent. Investors.

James A. Hendershott, Eugene, Or., for defendant Powell.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff seeks determination that an obligation asserted against defendant is excepted from discharge and is nondischargeable under 11 United States Code § 523(a)(4).

Plaintiff through its principal and president, Donald Quinn, entered into a written agreement with the defendant, sole proprietor of a company engaged in the sale of hot tubs, under the terms of which agreement plaintiff agreed to purchase at a discount contract balances due on sales contracts entered into by defendant with defendant's customers. Plaintiff was to pay 90% of the contract balance for the contracts.

The agreement dated August 30, 1978, provided that the plaintiff agreed to buy the chattel paper, and the defendant to sell it subject to plaintiff's right to reject contracts it deemed unsatisfactory by reason of the credit status of defendant's customer. Also, the agreement required the purchased chattel payment contain a requirement that the customer pay the balances in full within 30 days of the date of issuance. If not so paid, the paper was agreed deemed delinquent and was required to be repurchased by the defendant Powell, within 15 days of notice from plaintiff of such delinquency.

Powell also personally guaranteed by the agreement payment of the contract balances.

A unique provision of the contract required that if Powell should "receive any checks, drafts, acceptances, other money instruments or cash in payment of any of the chattel paper assigned to Central hereunder, such payment will immediately be turned over to Central in its original form."

Testimony at trial established the practice of the parties under the agreement was to leave collection of the accounts to Powell, and when a contract which had been delivered to Central for funds pursuant to the agreement was paid, the copy delivered to the plaintiff was marked paid by Quinn and returned to Powell.

The testimony is in conflict as to whether four of the contracts marked paid had in fact been paid. They remained in Quinn's possession, however, and this tends to substantiate his testimony that he had marked them paid but when he took them to Powell's office did not receive payment because Powell was not there.

Plaintiff corporation was used by Quinn to attract funds from "investors" whose money at least in part was used to purchase the contracts. This source of money became unavailable, and Quinn ceased purchasing paper in December, 1978. This caused that source of money to be unavailable to Powell who ceased "buying back" contracts by paying them off as the customers paid him.

Although in March, 1979 the parties exchanged letters disagreeing as to the date of termination of the agreement, no new contract transfer transactions occurred between them after December, 1978.

After the parties' ceased the chattel paper transactions, defendant's business check was issued to plaintiff on February 5, 1979, for $1,000.00.

In November, 1980 plaintiff instituted legal action in the Circuit Court of the State of Oregon for Lane County for money due alleging as grounds money had and received and conversion. On October 5, 1981, a stipulated judgment was entered on that action for $22,540.78 plus interest, with a provision for delay of execution for 30 days. Defendant filed his voluntary petition in bankruptcy on November 12, 1981, scheduling debts, priority, secured, and unsecured aggregating over $410,000.00

which were increased by amendment to over $673,000.00.

Defendant asserts that the transactions should be determined loans, not sales of contracts and, if so, as such were in violation of the Oregon usury laws and therefore should subject defendant for liability only for funds advanced and not repaid without interest, and furthermore should equitably prevent plaintiff from entitlement to nondischargeability relief.

Plaintiff contends that the transactions involved sales of chattel paper and as such were not subject to Oregon's usury laws.

Plaintiff further urges that by failure to turn over "in its original form" the receipt of payments plaintiff entrusted defendant to collect, defendant was guilty of embezzlement of the money received and not paid over.

Defendant urges that the case of *Starker v. Heckart*, 200 Or. 573, 267 P.2d 219 (1954) which held under similar circumstances that the transaction involved a sale of chattel paper was not a loan and therefore not usurious is distinguishable because of the provision in the agreement in the case at bar requiring buyback of contracts by defendant. That distinction is not significant when in both cases a personal guarantee would produce the same result.

Ordinarily, the Court is entitled to look behind the transaction and its nature to determine whether a sale agreement or loan is involved, and under all the circumstances surrounding the evidence in this case a close question is presented. The parties by their agreement have, however, provided that:

"... this agreement and all transactions, assignments and transfers hereunder and all rights of the parties shall be governed as to validity, construction, enforcement and in all other respects by the laws of the State of Oregon."

■ This Court, therefore, can find no basis to overcome the decisional law of Oregon characterizing the nature of the transactions. (See *Starker v. Heckart*, supra.)

The sales agreement imposed upon the defendant clearly defined duties relating to collections. Defendant disclaims understanding his duty to turn over funds to the plaintiff as they were collected on the contracts assigned.

However, defendant is a long-time college instructor in English, psychology and numerous other college courses. He also acknowledged having operated as owner several businesses over a period of years. Testimony is that he paid sufficient attention to the contract signed to insist upon changes in one earlier drafted by plaintiff's former attorney.

In his letter to plaintiff advising of termination of the agreement, he refers to specific provisions therein. His testimony was often evasive, punctuated with apparent ability to remember only that which would serve his cause.

In his deposition admitted in evidence, and used in his examination, appears the following question and answer:

"Q. Is there some reason why you have trouble remembering lawsuits against you?

"A. I think, there are reasons as to why anyone would rather not remember those things which are negative."

■ Embezzlement is both a crime in the state of Oregon and under federal law. (Cf. 18 U.S.C. § 641) For purposes of determination of dischargeability under section 523(a)(4) federal definitions apply. *In re Paley*, 8 B.R. 466 (Bkrtcy.N.Y.1981). If this were not true dischargeability might be rendered nonuniform because of the various state definitions of the crime of embezzlement, which is generally understood to be the intentional misappropriation of money or property of another that has lawfully been received, but knowingly and wrongfully misused by the "embezzler". (*In re Storms*, 28 B.R. 761 [Bkrtcy.E.D.N.C.1983]).

■ The defendant urges that conduct of the plaintiff in on occasion accepting checks drawn by defendant on his own account to pay off contracts constituted

waiver of the obligation to pay over receipts in their original form and transformed the transactions into a creditor-debtor relationship. Waiver is a doctrine which must be dignified by sufficient evidence of intention to waive instead of by unilateral conduct of the party who violates an agreement. The terms of an agreement may be insisted upon and the defendant may not rely upon the violation as the other party's waiver. This Court finds that the evidence in this case is not sufficient to constitute waiver, particulary in the face of the written agreement's provision that waiver for a particular breach shall not be deemed a waiver of any subsequent breach. See *Waterway Terminals Co. v. P.S. Lord Mechanical Contractors*, 242 Or. 1, 406 P.2d 556 at 567–8 (Or.1965).

■ The Court finds that when the plaintiff discontinued the supply of new money by additional contract purchases the defendant knowingly, wilfully and wrongfully applied payments from customers of contracts assigned to the plaintiff by him to defendant's own use well knowing that although he was entitled to receive the payments, he had a duty to promptly deliver such payments to the plaintiff and not divert them to his own use and that use such constituted embezzlement as contemplated by 11 U.S.C. § 523(a)(4) and causes the obligation to be non-dischargeable in defendant's bankruptcy case.

■ The unfortunate disarray of the records of both plaintiff and defendant makes difficult determination of the amount of the non-dischargeable obligation. On that issue the plaintiff's burden of proof does not overcome the amount acknowledged by the debtor to be $17,605.78 as due the plaintiff on contracts assigned to plaintiff for which collection was not turned over. The stipulated state court judgment could well have included obligations due on contracts guaranteed by defendant for which collection had not been made. Basis of its calculation is not shown. The Court has previously noted that the conflict of testimony should be resolved in favor of the plaintiff concerning

payment due to the extent collected on the four contracts about which payment to plaintiff by defendant is disputed. The above sum reflects this finding. The plaintiff is entitled to judgment that such sum is a non-dischargeable debt.

Both parties have well briefed the applicable law and assisted the Court thereby.

The agreement provides for attorney fees, and the attorneys have agreed they may be fixed by the Court for the prevailing party.

■ The debt involved in these proceedings is not a consumer debt and the provision of § 523(d) which seems to allow attorney fees only for prevailing debtors does not apply.

The Court will therefore allow in the judgment in addition to interest at the legal rate until paid, plaintiff's attorney fees in the amount of $750.00 and plaintiffs costs to be taxed.

This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 7052 they will not be separately stated.

Separate Judgment consistent with this Memorandum Opinion will be entered.