BEAM, Circuit Judge.
 

 Richard Belfry (debtor) appeals from an order of the district court affirming the bankruptcy court’s determination that a debt of $6,039.96 arose from embezzlement and was thus nondischargeable under 11 U.S.C. § 523(a)(4). The bankruptcy court found that Christopher Cardozo had en
 
 *662
 
 trusted Belfry with $19,500.00 for the specific purpose of restoring a BMW 633, and that Belfry’s diversion of the funds to other purposes constituted embezzlement. Under the facts established by the bankruptcy court, we do not believe that Cardozo’s understanding that the $19,500.00 would be used exclusively, for the restoration of the BMW is sufficient to prove a claim of embezzlement under 11 U.S.C. § 523(a)(4). We therefore reverse.
 

 I. EXCEPTIONS TO DISCHARGE
 

 Exceptions to discharge are construed narrowly.
 
 In re Black,
 
 787 F.2d 503, 505 (10th Cir.1986). The burden of proving that a debt falls within a statutory exception is on the party opposing discharge.
 
 Id.
 

 II. EMBEZZLEMENT
 

 The bankruptcy code provides that a discharge does not free an individual debtor from any debt “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” 11 U.S.C. § 523(a)(4). Embezzlement, for purposes of this section, is the “fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come.”
 
 In re Schultz,
 
 46 B.R. 880, 889 (Bankr.D. Nev.1985). A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used.
 
 See, e.g., Matter of Storms,
 
 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983) (holding that contract by which insurance agent received premiums from sales did not restrict agent’s use of the funds for his own purposes).
 

 A. Bankruptcy Court’s Determination
 

 The bankruptcy court found that Belfry was not entitled to use the $19,500.00 for purposes other than restoration of the BMW, stating:
 

 I conclude that the plaintiff has proven that the debtor committed embezzlement. The debtor undertook a contractual obligation to restore the BMW and was entrusted with $19,500. The plaintiff understood that this money was to be used exclusively for the restoration of the BMW. * * * Cardozo did not give the debtor his money with the understanding that he was providing the debtor with operating capital for the period of time it took to find the car he wanted and restore it.
 

 Order Denying Discharge of Debt at 17 (Bankr.D.Minn. Jan. 12, 1987).
 

 B. Agreement Between Belfry and Cardozo
 

 The parties entered into a written agreement which agreement is dated November 14, 1980. The agreement dealt with six areas of responsibility of the debtor: (1) equipment of the vehicle; (2) quality of delivery; (3) terms of warranty for parts and labor; (4) debtor’s promise to resell vehicle and refund purchase price upon resale if buyer is dissatisfied; (5) date of delivery; and (6) debtor’s guarantee on the paint work. On November 20, 1980, Cardozo handed debtor a check for $19,500.00.
 

 The car was to be delivered on April 15, 1981. It was not. Belfry had already spent the $19,500.00 for purposes largely unrelated to restoring the BMW. As an initial matter, it seems fairly well settled that absent Cardozo’s alleged “understanding,” Belfry’s use of the funds would not be embezzlement.
 
 See In re Kalmar,
 
 18 B.R. 343, 345 (Bankr.E.D.Pa. 1982). Payment of a contract price in exchange for the recipient to undertake an obligation of future performance transfers ownership of the money to the recipient.
 
 See In re Schultz,
 
 46 B.R. at 889-90. One cannot embezzle one’s own property.
 
 See id.
 

 III.FRAUDULENT APPROPRIATION OF PROPERTY
 

 In the case before us, the bankruptcy court found that there was an understanding that the funds would be used exclusively for the restoration of the BMW. By finding that Cardozo had transferred the $19,500.00 to Belfry in trust, the court, by implication, found that Belfry did not have the authority to use the funds for other purposes, notwithstanding the passage of title. The question before the court is whether Cardozo’s understanding
 
 *663
 
 was sufficient to transform what would normally be Belfry’s dischargeable obligation to deliver a fully restored BMW,
 
 see In re Kalmar,
 
 18 B.R. at 346, into a non-dischargeable debt. We do not believe that it was.
 

 In cases involving nonfiduciary bankrupt debtors, courts answer this question by examining whether the terms by which the debtor came to hold title to the money creates particular obligations on the debtor. Obligations sufficient to support a claim of embezzlement are ones which make the debtor’s discretionary use of the payment, prior to complying with the obligations, improper.
 
 See In re Powell,
 
 54 B.R. 123, 124 (Bankr.D.Or.1983). On the other hand, terms which manifest nothing more than the “hope[ ] that no problem will ensue after a carefully and skillfully negotiated agreement is set forth in a legally enforceable contract,”
 
 see In re Kalmar,
 
 18 B.R. at 345-46, will not support a claim of embezzlement.
 

 In this case, there has been payment of $19,500.00 by a plaintiff, and in return, a debtor undertook an obligation to deliver a restored car. This obligation could be fully performed without regard to how the debt- or used the money. He was not required to segregate the funds or place them in an escrow account prior to using them for the restoration. In short, the agreement permitted full use of the money by the debtor. In such a case, the result is a dischargeable breach of contract.
 
 See id.; In re Schultz,
 
 46 B.R. at 888-89. The situation might have been different if the agreement had required Belfry to pay expenses for restoration with the actual dollars that he had received from Cardozo.
 
 See In re Powell,
 
 54 B.R. at 124.
 

 Additionally, as Cardozo testified, the payment included Belfry’s profit, if any. Transcript at 25. Thus, Belfry was authorized to spend as little of the $19,500.00 as necessary, and as already indicated, was free to use the funds as he saw fit prior to commencing work on the car. In such a case, there is not embezzlement.
 
 See Matter of Storms,
 
 28 B.R. at 765 (no obligations imposed on debtor that prevented his use of the funds prior to having to deliver them to the plaintiff).
 

 Finally, we believe there is a strong policy reason for requiring that a creditor make use of protective devices rather than rest on hopes and understandings, in a bankruptcy context.
 

 When Cardozo gave Belfry the $19,-500.00, Belfry had told him that he was experiencing cash flow problems. This new infusion of cash made it possible for Belfry to maintain the appearance of financial stability and to contract for business with others. Such additional business could run to Cardozo’s benefit by keeping Belfry in business long enough to complete the contract to restore the automobile. If we hold for the creditor, the creditor has thus increased the chance of the debtor performing while, at the same time, the creditor receives the benefit of a nondis-chargeable obligation in the event of debt- or’s bankruptcy. We believe that, under the facts of this action, it is unfair to similarly situated creditors for Cardozo to have it both ways.
 

 IV. CONCLUSION
 

 Accordingly, having found that there were no obligations imposed on the debtor that made Belfry’s use of the funds unlawful, the district court’s affirmance of the bankruptcy court is reversed.