In re Danny L. STEFANOFF, Debtor.

Evelyn HULL, individually, and Evelyn Hull, as Personal Representative of the Estate of Ansel Hull, deceased, Plaintiff,

v.

Danny L. STEFANOFF, Defendant.

Bankruptcy No. 88–00700–C.
Adv. No. 88–0159–C.

United States Bankruptcy Court,
N.D. Oklahoma.

March 17, 1989.

Guy Clark, Ponca City, Okl., for plaintiff.

Steve Harris, Tulsa, Okl., for defendant.

## MEMORANDUM DECISION AND OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

On February 9, 1989, the Court heard this adversary proceeding brought under 11 U.S.C. § 523(a)(4) to determine the dischargeability of a debt. After considering the evidence presented and the arguments and authorities of counsel, the Court makes the following findings of fact and conclusions of law.

On December 18, 1981, Evelyn and Ansel Hull conveyed 4.6905 acres of land in Tulsa County, Oklahoma, to Terry and Sandra Troxell. In consideration for this conveyance, the Troxells executed a note payable to the Hulls in the amount of $435,000.00 secured by a mortgage on the land. That same day, the Troxells conveyed the 4.6905 acres to a partnership known as South Lewis Ventures, which assumed the Troxells obligations under the note and mortgage with the consent of the Hulls. Danny L. Stefanoff ("Stefanoff") was one of the partners of South Lewis Ventures.

At some time in late 1982, Stefanoff conceived the idea of building a retirement center on part of the 4.6905 acres using tax exempt bond financing. On December 21, 1983, the 4.6905 acres were platted into Lots 1 and Lot 2, of which Lot 2 was the proposed site of the retirement center. Stefanoff formed Burgundy Place Limited Partnership ("Burgundy Place"); of which he became sole general partner, to acquire Lot 2 from South Lewis Ventures and develop the retirement center.

One of the requirements for closing the acquisition phase of the project was that Burgundy Place obtain title to Lot 2 free and clear of the Hulls' mortgage lien. Originally, the parties intended that Burgundy Place pay South Lewis Ventures $344,404.50 to obtain title to Lot 2. The $344,404.50 would in turn be paid to the Hulls to satisfy their mortgage and obtain a release of the same. However, for tax reasons the Hulls decided that they did not want to receive a lump sum of $344,404.50. In fact, the Hulls never did receive the $344,404.50, nor did they report the $344,-404.50 as income. Instead, at the closing on March 1, 1985, the Hulls agreed to release their mortgage on Lot 2 in consideration for a note from Stefanoff in the amount of $344,404.50 secured by a $344,-404.50 Certificate of Deposit at the Bank of Oklahoma in Stefanoff's name and all replacements of that Certificate of Deposit ("Certificate of Deposit").

On February 18, 1986, Stefanoff converted the funds in the Certificate of Deposit to his business account at Victor Federal Savings and Loan. Stefanoff continued to make the payments under the $344,404.50 note to the estate of Ansel Hull and to Evelyn Hull, personally, until October and November, 1987, respectively.[1] In February or March, 1988, Evelyn Hull discovered that the Certificate of Deposit had been converted. In March, 1988, the involuntary bankruptcy petition instituting this bankruptcy case was filed against Stefanoff.

Plaintiffs contend that Stefanoff was acting in a fiduciary capacity when he converted the $344,404.50 Certificate of Deposit to his own use, and, therefore, this debt is excepted from discharge under 11 U.S.C. § 523(a)(4). An express or technical

---

1. Ansel Hull died in July of 1985. Thereafter, Stefanoff made separate note payments to Evelyn Hull, individually, and to Evelyn Hull, as representative the Ansel Hull's estate.

trust, arising by agreement or by statute prior to the commission of any wrongful act, must exist between the parties to create the requisite fiduciary capacity under § 523(a)(4). *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Romero*, 535 F.2d 618 (10th Cir.1976); *In re Black*, 787 F.2d 503 (10th Cir.1986). In this case, there is no applicable statute which would impose the requisite trust relationship. Therefore, any trust relationship would have to have arisen by agreement of the parties.

■■■ The elements of an express trust are the intent to create a trust, a clearly defined trust res, and specific trust duties.[2] In this case, the pertinent agreements of the parties are (1) the $344,404.50 note dated March 1, 1985, from Stefanoff to the Hulls, and (2) the security agreement dated March 1, 1985, whereby Stefanoff granted the Hulls a security interest in the Certificate of Deposit to secure the repayment of the note. These documents merely refer to the Certificate of Deposit as collateral to secure the repayment of the $344,404.50 note.

Plaintiffs attempt to distinguish this transaction from the typical secured transaction by arguing that the money that funded the Certificate of Deposit was actually the Hulls' money, not Stefanoff's. However, the Hulls admit that they elected not to receive the money, in fact did not receive the money, and did not pay taxes on it. Therefore, the $344,404.50 never became the property of the Hulls. Instead, as recited in the agreements, the $344,-404.50 was the property of Stefanoff and was pledged, in the form of the Certificate of Deposit, as collateral to secure Stefanoff's note.

The parties could have declared that Stefanoff was holding the $344,404.50 Certificate of Deposit in trust for the Hulls, but they did not. As stated above, nothing in the documents indicates that Stefanoff intended to hold the money in trust, and Stefanoff denies that this was his intent. The documents clearly designate the Certificate of Deposit as collateral to secure repayment of the note.

Finally, if Stefanoff were holding the Certificate of Deposit in trust, there would have been no need for Stefanoff to execute the $344,404.50 note. A trust agreement could have provided that a certain amount of the the trust fund be distributed to the Hulls over time until the fund was depleted. Instead, Stefanoff executed the note, legally obligating himself to pay equal monthly installments of principal and interest in the amount of $3,783.88 until December 31, 1991, when the entire unpaid balance became due. The monthly payment was calculated as the amount needed to amortize the note over a twenty year period. The interest earned on the Certificate of Deposit was never equal to the monthly payment required under the note. Therefore, Stefanoff had to use funds other that those generated by the Certificate of Deposit itself to make the note payments. Obviously, had Stefanoff paid off the note, the Hull's security interest in the Certificate of Deposit would have been extinguished and the Certificate of Deposit would have been Stefanoff's free and clear of such security interest. Even if Stefanoff had used the Certificate of Deposit itself to pay the debt, there would have been some money remaining because each monthly payment reduced the principal owing under the note. Any remaining balance from the Certificate of Deposit not used to pay off the note would have belonged to Stefanoff, rather than the Hulls.

Therefore, the Court finds that Stefanoff was not acting in a fiduciary capacity with regard to the Certificate of Deposit because the parties did not have the requisite intent to create a trust. Instead, the parties intended for the Certificate of Deposit to serve as collateral for repayment of the note and nothing more.

■■ In the alternative, Plaintiffs contend that Stefanoff embezzled the funds and therefore the debt is excepted from discharge under § 523(a)(4). Embezzlement under § 523(a)(4) is the fraudulent appropriation of property *of another* by one to

---

2. See generally G. Bogert, Trusts (6th Ed.1987).

whom such property has been entrusted or into whose hands it has lawfully come. *In re Wallace*, 840 F.2d 762 (10th Cir.1988). As discussed above, the $344,404.50 was never the property of the Hulls. While the Hulls were entitled to receive that amount as consideration for releasing their mortgage, they elected not to receive the money. Instead, they received the $344,404.50 note from Stefanoff secured by collateral in the form of the $344,404.50 Certificate of Deposit. The $344,404.50 Certificate of Deposit was Stefanoff's property, and Stefanoff did not hold the Certificate of Deposit in trust for the Hulls. One cannot embezzle one's own property. *In re Belfry*, 862 F.2d 661 (8th Cir.1988). Therefore, Stefanoff's conversion of the Certificate of Deposit did not constitute embezzlement under § 523(a)(4).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiffs complaint under 11 U.S.C. § 523(a)(4) be and hereby is denied and the debt sought to be excepted from discharge is deemed dischargeable.