# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2018

_____

| | | |
|---|---|---|
| In re: Elizabeth E. Nail, | * | |
| | * | |
| Debtor. | * | |
| ------------------------------------------------ | * | |
| Arvest Mortgage Company, | * | |
| | * | Appeal from the United States |
| Appellant, | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| v. | * | |
| | * | |
| Elizabeth E. Nail, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 14, 2012
Filed: June 5, 2012

_____

Before LOKEN, BYE, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Elizabeth E. Nail borrowed from Arvest Mortgage Company ("Arvest") to purchase a newly-constructed home, executing a promissory note and mortgage. In April 2009, Ms. Nail filed a voluntary petition for Chapter 13 bankruptcy relief. Arvest then purchased the mortgaged property at a foreclosure sale for substantially less than what Ms. Nail owed on the promissory note and filed this adversary proceeding, seeking a judgment declaring the mortgage debt nondischargeable under

11 U.S.C. §§ 523(a)(2) and (4). At trial, the bankruptcy court directed a verdict for Ms. Nail on the § 523(a)(2) claim but concluded that $65,000 of the remaining debt was nondischargeable under § 523(a)(4) because Ms. Nail held that amount of settlement proceeds in a fiduciary capacity created by § 4-58-105(b)(2) of the Arkansas Code. The Bankruptcy Appellate Panel (BAP) reversed. Arvest appeals, arguing that, as to the settlement proceeds, Ms. Nail committed "fraud or defalcation while acting in a fiduciary capacity" and "embezzlement" within the meaning of § 523(a)(4). We review findings of fact for clear error and the BAP's conclusions of law *de novo*. See Hunter v. Philpott, 373 F.3d 873, 875 (8th Cir. 2004). Agreeing with the BAP that the Arkansas statute did not create the requisite fiduciary relationship, and that Ms. Nail was not guilty of embezzlement within the meaning of § 523(a)(4), we affirm.

## I. Background

Section 523(a) of the Bankruptcy Code defines various classes of debts that are excepted from an individual Chapter 13 debtor's discharge in bankruptcy. Section 523(a)(4) excepts debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." At issue here are the distinct exceptions for defalcation while acting in a fiduciary capacity and embezzlement. We construe these exceptions narrowly, imposing the burden of proof on Arvest, the party opposing Ms. Nail's discharge. In re Belfry, 862 F.2d 661, 662 (8th Cir. 1988).

Soon after Ms. Nail moved into the new home, she discovered significant structural defects and sued the builders for constructive fraud, breach of warranty, and breach of contract. Arvest granted her a twelve-month loan forbearance while she litigated the dispute. When the forbearance period ended and Ms. Nail did not resume the required loan payments, Arvest commenced foreclosure proceedings in state court. At Ms. Nail's deposition in the foreclosure suit, Arvest learned that the builders had

paid $65,000 to settle her state court lawsuit. After the Chapter 13 filing, Arvest obtained relief from the automatic stay to complete the foreclosure.

The mortgage assigned to Arvest all "Miscellaneous Proceeds," a term defined to include "any . . . settlement . . . paid by any third party . . . for . . . damage to, or destruction of, the property." Rather than remitting the settlement proceeds to Arvest pursuant to this assignment provision, Ms. Nail invested part of the proceeds in a new home and spent the remainder, primarily to pay legal fees and reduce her credit card debts. After a trial, the bankruptcy court concluded that the $65,000 settlement proceeds were Miscellaneous Proceeds; the written assignment created an express trust under Ark. Code § 4-58-105(b)(2);[1] and therefore Ms. Nail's failure to apply those proceeds to the mortgage debt was a defalcation while acting in a fiduciary relationship. The court declared the $65,000 nondischargeable subject to an allowance or set-off for Ms. Nail's litigation expenses. It entered a judgment in favor of Arvest in the amount of $46,016.25. Ms. Nail appealed.

The BAP reversed the bankruptcy court's decision on three distinct grounds: (1) because Arvest failed to prove the settlement proceeds were "Miscellaneous Proceeds" under the mortgage assignment provision; (2) because those proceeds arose, at least in part, from Ms. Nail's tort causes of action against the builders, and Arkansas law prohibits the assignment of tort claims or the proceeds of tort claims; (3) because, even if the settlement proceeds were validly assigned Miscellaneous Proceeds, neither the mortgage agreement nor Ark. Code § 4-58-105(b)(2) created the fiduciary relationship that is necessary to render a debt nondischargeable under

---

[1]§ 4-58-105(b)(2) provides: "In any case where, acting without knowledge of the assignment . . . the debtor in good faith pays all or part of such account to the assignor . . . the assignor . . . shall be a trustee of any sums so paid and shall be accountable and liable to the prior assignee thereof."

§ 523(a)(4). Arvest appeals, arguing that two § 523(a)(4) exceptions apply -- defalcation while acting in a fiduciary capacity and embezzlement.

## II. Defalcation While Acting in a Fiduciary Capacity

Section 523(a)(4) bars discharge of an obligation a debtor incurs through fraud or defalcation "while acting in a fiduciary capacity." "The meaning of these words has been fixed by judicial construction" since before the Civil War; "the statute 'speaks of technical trusts, and not those which the law implies from the contract.'" Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934), quoting Chapman v. Forsyth, 43 U.S. 202, 208 (1844). "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." Id. "Whether a relationship is a 'fiduciary' one within the meaning of § 523(a)(4) is a question of federal law." In re Cochrane, 124 F.3d 978, 984 (8th Cir. 1997) (quotation omitted).

The fiduciary relationship reflected in an express or technical trust is typically created by contract. Numerous cases have addressed whether a bankrupt debtor's alleged defalcations of contractual obligations to a secured lender such as Arvest were committed while acting in a fiduciary capacity. "It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes." In re Long, 774 F.2d 875, 878-79 (8th Cir. 1985). Most secured lending agreements impose duties on the borrower in dealing with the creditor's collateral, but those duties seldom create a § 523(a)(4) fiduciary capacity. In Davis, for example, the Supreme Court affirmed the discharge of an automobile dealer from its secured debt to a bank even though the debtor had breached duties reflected in a document called a "trust receipt." The trust receipt and bill of sale were "a mortgage in another form," the Court explained. "A mortgagor in possession before condition broken is not a trustee for the mortgagee within the

-4-

meaning of this statute, though he has charged himself with a duty to keep the security intact." 293 U.S. at 334. In In re Long, 774 F.2d at 878-79, we cited Davis in affirming a decision that § 523(a)(4) did not render a secured debt nondischargeable; we concluded that the contract between a secured inventory lender and the bankrupt merchant in which the borrower agreed to become trustee of an "express trust" was nonetheless "intrinsically more contractual than fiduciary."

Applying these authorities, the bankruptcy court and the BAP properly rejected Arvest's contention that the mortgage document itself created an express trust. That document did nothing more than provide for a contractual assignment of certain proceeds. Indeed, Arvest has more or less abandoned that contention on appeal,[2] instead urging, as the bankruptcy court concluded, that Ark. Code § 4-58-105(b)(2) created the requisite fiduciary relationship by declaring that Ms. Nail "became the trustee of the funds upon receipt of the Settlement Proceeds," and then committed a defalcation by spending the proceeds instead of remitting them to Arvest.

It is now well settled that a state statute may create the fiduciary relationship required by § 523(a)(4). See In re Long, 774 F.2d at 878. Determining whether a particular statute has done so can be difficult. "It is not enough [] that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.' Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1)

---

[2]Arvest's brief casually likens its assignment provisions to the insurance agency contract that we held created an express trust in Morgan v. Amer. Fid. Fire Ins. Co., 210 F.2d 53, 55-56 (8th Cir. 1954). The suggestion is beyond Arvest's statement of issues presented for review; it also lacks the slightest factual merit. The contract in Morgan expressly provided that "[a]ll premiums received by agent shall be held by agent in a fiduciary capacity as trustee for Company until delivered to Company or its managers." Id. at 54 (quotation omitted).

include a definable res and (2) impose 'trust-like' duties." Matter of Tran, 151 F.3d 339, 342-43 (5th Cir. 1998).

In Matter of Dloogoff, 600 F.2d 166, 169-70 (8th Cir. 1979), we held that a statute making it unlawful for a construction contractor to fail to apply payments owed to labor and material lienholders did not create a § 523(a)(4) fiduciary relationship because the Supreme Court of Nebraska had held that the statute did not create an express trust. Similarly careful analyses of other state lienholder protection statutes have produced differing § 523(a)(4) outcomes. Compare In re Nicholas, 956 F.2d 110 (5th Cir. 1992) (Tex. Construction Trust Fund Statute), and Matter of Angelle, 610 F.2d 1335 (5th Cir. 1980) (La. law), with Carey Lumber Co. v. Bell, 615 F.2d 370, 374-76 (5th Cir. 1980) (Okla. Lien Trust Statutes), In re Baird, 114 B.R. 198 (9th Cir. BAP 1990) (Ariz. Construction Trust Fund Statute), and Matter of Kawczynski, 442 F. Supp. 413 (W.D.N.Y. 1977) (N.Y. Lien Law).

In Matter of Marchiando, 13 F.3d 1111, 1113 (7th Cir. 1994), the Seventh Circuit concluded that the Illinois Lottery Law proviso that "the proceeds of sales of lottery tickets 'shall constitute a trust fund until paid to the [State]'" did not create a § 523(a)(4) fiduciary relationship:

> The key to knitting the cases into a harmonious whole is the distinction stressed in Davis . . . between a trust . . . that has an existence independent of the debtor's wrong and a trust . . . that has no existence before the wrong is committed. A lawyer's fiduciary duty to his client . . . pre-exists any breach of that duty, while in the case of a constructive . . . trust there is no fiduciary duty until a wrong is committed. [In this case, the trust] has a purely nominal existence until the wrong is committed. Technically, Marchiando became a trustee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts.

Id. at 1115-16; accord In re Tran, 151 F.3d at 345 (Tex. lottery sales proceeds statute). In In re McGee, 353 F.3d 537, 540-41 (7th Cir. 2003), the court, applying Marchiando, held that a municipal ordinance requiring landlords to hold tenant security deposits as trust funds *did* create a § 523(a)(4) fiduciary relationship because the ordinance imposed trust-like duties, such as requiring segregation of funds in an interest-bearing financial institution account "to ensure that the money would be available for return to the tenants if they kept their own promises."

Viewed in light of these cases, we agree with the BAP that Ark. Code § 4-58-105(b)(2) does not create a fiduciary relationship "in the strict and narrow sense" required by § 523(a)(4). Hunter, 373 F.3d at 876. As the BAP observed, the statute simply prescribes the legal effect when a party to an assigned account in good faith pays the assignor rather than the unknown assignee -- payment is an "acquittance" to the payor (here, the builders), and the assignor (Ms. Nail) is "accountable and liable to the prior assignee" (Arvest). The statute imposes no trust-like duties such as segregation of the Miscellaneous Proceeds. And while the statutory "trust" was created when the settlement proceeds were paid (assuming without deciding those proceeds were Miscellaneous Proceeds), as in Marchiando the trust had a "purely nominal existence" until Ms. Nail failed to remit those proceeds to Arvest. In other words, Ms. Nail was not a trustee "before the wrong and without reference thereto." Davis, 293 U.S. at 333. In these circumstances, we agree with the BAP that the mere use of the word "trustee," when viewed in the context of the statute as a whole, does not reflect a legislative intent to create the kind of express or technical trust required in the strict and narrow sense under § 523(a)(4). Therefore, the $65,000 debt was not nondischargeable under the fiduciary capacity subpart of § 523(a)(4).[3]

---

[3]The BAP also held that the settlement proceeds were not "Miscellaneous Proceeds" under the mortgage assignment provision, and that the proceeds in any event could not be lawfully assigned under Arkansas law. We do not address these issues because our conclusion that Ms. Nail did not act in a fiduciary capacity resolves Arvest's claim under this subpart of § 523(a)(4).

### III. Embezzlement

Alternatively, Arvest argues that the $65,000 debt is nondischargeable under the embezzlement subpart of § 523(a)(4). "Embezzlement, for purposes of section 523(a)(4), is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Phillips, 882 F.2d 302, 304 (8th Cir. 1989) (quotation omitted). The bankruptcy court did not need to reach this issue because it found defalcation while acting in a fiduciary capacity. Arvest preserved the issue when Ms. Nail appealed and now argues the BAP erred in failing to address it. But we perceive no error. Arvest contends that Ms. Nail embezzled settlement proceeds "entrusted" to her by reason of the mortgage assignment provision and Ark. Code § 4-58-105(b)(2). Thus, when the BAP concluded the settlement proceeds were not Miscellaneous Proceeds, it decided the embezzlement issue in Ms. Nail's favor. Of course, we are not affirming that aspect of the BAP's decision, so we must examine the issue more closely.

"One cannot embezzle one's own property." In re Belfry, 862 F.2d at 662. Therefore, documents assigning to a secured creditor proceeds that are part of the creditor's collateral are simply agreements in which the debtor retains the funds, subject to a security interest. In In re Phillips, for example, the borrower went out of business after spending most of the proceeds. The secured creditor argued that it "owned" the proceeds and therefore the bankruptcy debtors committed § 523(a)(4) embezzlement, making the debt nondischargeable. We disagreed:

> Although the term "assignment" was used in parts of the documentation, the parties treated the transaction as the routine granting of a security interest. . . . [We] conclude that [the borrower] owned the funds from the check subject to the security interest of the Bank. . . . Because the funds belonged to [the borrower] subject to [the bank's] security interest, the debtors could not have embezzled the funds and the debt is not nondischargeable under section 523(a)(4). 882 F.2d at 304-05.

Like the secured lender in <u>Phillips</u>, Arvest loaned Nail money secured by an interest in her home, including recoveries defined as Miscellaneous Proceeds. The parties treated the transaction as a mortgage or security interest. The assignment provision merely served as a collection device for Miscellaneous Proceeds, funds owned by Ms. Nail that she was contractually obligated to remit to Arvest. Thus, even if the settlement proceeds were Miscellaneous Proceeds, as we are assuming without deciding, Ms. Nail's alleged failure to comply with the assignment provision "was a dischargeable breach of contract, not a nondischargeable embezzlement." <u>Werner v. Hofmann</u>, 5 F.3d 1170, 1172 (8th Cir. 1993); <u>accord</u> <u>In re Mitchell</u>, No. 07-02379, 2008 WL 3992240, *2 (Bankr. S.D. Iowa 2008) (unpublished); <u>In re Moller</u>, No. 04-01413S, 2005 WL 1200916, *1-3 (Bankr. N.D. Iowa 2005) (unpublished). The BAP properly concluded that the $65,000 debt was not nondischargeable under the embezzlement subpart of § 523(a)(4).

For the foregoing reasons, the judgment of the BAP in this adversary proceeding is affirmed.

_____